Commonwealth *v.* Sears, Appellant.

Argued September 12, 1958. Before RHODES, P. J., HIRT, GUNTHER, WOODSIDE, ERVIN, and WATKINS, JJ. (WRIGHT, J., absent).

*David Kanner,* for appellant.

*Domenick Vitullo,* Assistant District Attorney, with him *Juanita Kidd Stout,* Assistant District Attorney, *James N. Lafferty,* First Assistant District Attorney, and *Victor H. Blanc,* District Attorney, for appellee.

OPINION BY WATKINS, J., November 14, 1958:

The appellant, William Sears, together with one, Burt McGinley, were charged with having taken a wall

safe from the home of one, Philip Venitsky, on March 20, 1957. They were indicted and tried in the Court of Quarter Sessions of Philadelphia County on indictments charging burglary, larceny and receiving stolen goods. McGinley was acquitted, the appellant convicted. Both were acquitted of a bill charging conspiracy.

Motions in arrest of judgment and for a new trial were denied and the appellant was sentenced to the Eastern State Penitentiary for a term of two and one-half to five years. This appeal followed.

The Commonwealth established that on March 20, 1957, a wall safe was taken from the Venitsky home at 3126 Cottman Avenue, Philadelphia. The contents of the missing safe included one hundred $2 bills, and a number of foreign and domestic coins.

On March 22, 1957, police officers entered a room in a garage owned and operated by McGinley at 4455 Paul Street, Philadelphia. There was a card game in progress and including the appellant and McGinley there were seven persons in the room. Four $10 bills and three $2 bills were taken from the appellant's hand and a sum of money, including forty-five $2 bills were found in a trash can about three feet from where the appellant was sitting in the room.

On one of the $2 bills taken from the appellant was written number "39", on another the number "43" and on the third, number "16". On one of the $2 bills taken from the trash can was the number "38". Venitsky testified that he had written the numbers on the bills in question with the exception of number "16", which was one of his bills but the writing was by someone else. He testified that he was a collector of $2 bills.

A handwriting expert testified that the numbers written on the three bills were in Venitsky's handwrit-

ing. A chemist testified that the ink and the markings corresponded to Venitsky's ball-point pen.

On March 23, 1957, a number of foreign and domestic coins were found in appellant's home at 2816 "A" Street, Philadelphia. Venitsky testified that some of the foreign coins were similar to coins which had been in his safe. Specifically, he identified a Danish coin, an English copper penny dated 1797, an English copper half-penny dated 1865, and a German mark dated 1900, as being similar.

The appellant complains that the possession of money which had been the subject of the recent burglary, under the circumstances above set forth, negate a felonious taking, and is consistent with recent innocent acquisition and is not subject to the inferences that usually arise. He also contends that the inference does not apply to money which is negotiable and that it was reversible error to admit the coins and paper money into evidence when they were not in his exclusive possession and not properly identified as the subject matter of the burglary.

We have held that the fact of possession of recently stolen property is evidence from which a jury may infer that the possessor was guilty of larceny, receiving or burglary; that joint possession of recently stolen goods may support an inference of guilt on the part of either or both of the possessors and it is not necessary for the Commonwealth to negative the possibility that some joint possessor other than the defendant was the sole culprit. *Com. v. O'Keefe,* 175 Pa. Superior Ct. 491, 106 A. 2d 634 (1954).

That is clearly the case here and we agree with Judge BOK, who said in his opinion:

"The jury could certainly infer exclusive possession and theft from the fact that defendant stood there with a stolen, marked bill in his hand and another stolen,

marked bill amid the many of the similar and unusual denomination in the trash can three feet away.

"Defendant complains that evidence of where defendant lives, and where the coins were found, was proved by hearsay evidence from defendant's wife. The record has more than that. Defective Maguire testified that he got a wrong address from defendant, 4816 A Street. He then went to 2816 A Street, where he said 'we had known where Sears lived'. When asked whose house it was he said, 'the house of William Sears and his wife'. He also said that Mrs. Sears told him who owned the house and that he knew it of his own knowledge. The jury could find that he knew both ways, by his own knowledge or by common knowledge, and by what Mrs. Sears told him.

"As for the money found in defendant's hand and the near-by trash can, the jury could decide whether defendant got the bills in the crap game[1] which had been going on in the room or whether he had them already and was disposing of them or whether he was contributing them to the game.

"The only other objection of moment is that Venitsky said that several of the coins found in defendant's house were 'similar' to those that had been stolen from him. It is the failure of absolute identification that is objected to.

"The law does not require the impossible. Not every exemplar of every kind of property can be individually recognized, and the closer to fungibility the property comes the less possible is accuracy of identification. This is peculiarly a jury question. Likelihood plays a part. It is not every home that has an old 'cartwheel' English penny of 1797; in fact, very few homes have

---

[1] According to the record it was a card game but the reasoning of the lower court applies in either case.

36

them. Time is a factor, too; the police found the coins in defendant's home on March 23, 1957".

It might be added too that $2 bills come into the category "limited availability" so the loss of one hundred such bills and the finding of forty-five shortly thereafter in the suspicious circumstances herein discussed, even without the markings, would raise a jury question. Of course, all circumstantial evidence must be compatible with the defendant's guilt and must prove his guilt not to a moral certainty but beyond a reasonable doubt. *Com. v. Kloiber,* 378 Pa. 412, 106 A. 2d 820 (1954).

The complaint of the appellant concerning the Commonwealth's examination of witnesses called on behalf of McGinley, his co-defendant, after the appellant had rested his case, is without merit. The court below protected the rights of the appellant by complying with his request to permit cross-examination of those witnesses called by McGinley if he felt their testimony had any adverse affect on him.

Judgment of sentence is affirmed, and it is ordered that appellant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part thereof which had not been performed at the time the order of supersedeas was entered.